ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **JORGE L. CONDE VIERA** <br> QUERELLANTE(S)-RECURRIDA(S) <br><br> V. <br><br> **P & J AFFORDABLE HOUSING DEVELOPMENT CORP.** <br> QUERELLADA(S)-RECURRENTE(S) | **KLRA202400280** | ***REVISIÓN DE DECISIÓN ADMINISTRATIVA*** <br> procedente del **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** <br><br> Civil Núm.: <br> **PON-2023-0004010** <br><br> Sobre: <br> Compraventa de Vivienda a Desarrollador |

Panel integrado por su presidenta, la Juez Lebrón Nieves; la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos,* juez ponente.

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 4 de septiembre de 2025.

Comparece ante este Tribunal de Apelaciones, **P & J AFFORDABLE HOUSING DEVELOPMENT, CORP.,** (**P & J HOUSING**) mediante escrito intitulado *Petición* incoado el 30 de mayo de 2024. En su recurso, nos solicita que revisemos la *Resolución* promulgada el 4 de enero de 2024 por el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)**.[1] Mediante esta determinación administrativa, se declaró ha lugar la *Querella* entablada el 14 de marzo de 2023 por el señor **JORGE L. CONDE VIERA** (señor **CONDE VIERA**) contra **P & J HOUSING**. Por consiguiente, se le requirió a **P & J HOUSING** llevar a cabo "todos los trámites conducentes a la finalización de la compraventa de la propiedad número 45 del Proyecto Savannah en Caguas, Puerto Rico, a favor del señor **JORGE L. CONDE VIERA**", ello, dentro del término improrrogable de veinte (20) días. Del mismo modo, le impuso la cantidad de $3,000.00 en concepto de honorarios de abogados.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 11 de enero de 2024. Apéndice de *Petición,* págs. 54- 78.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 5 de abril de 2022, **P & J Housing** y el señor **Conde Viera** suscribieron un *Contrato Uniforme de Compraventa* (*Contrato*) concerniente al solar Número 45, Modelo 3/2, en el Proyecto de la Urbanización Gran Savannah en el municipio de Caguas.[2] En el alusivo *Contrato*, **P & J Housing** se comprometió a gestionar el financiamiento hipotecario para la adquisición de la propiedad por la cantidad de $121,000.00. La entrega de la residencia se realizaría en un término de dieciocho (18) meses. Así, el señor **Conde Viera** procedió a efectuar un pronto pago por la cuantía de $50.00, mediante cheque personal.[3]

Más tarde, el 28 de noviembre de 2022, el Proyecto de la Urbanización Gran Savannah fue certificado como uno de *interés social* por el Departamento de la Vivienda.[4] En diciembre de 2022, **P & J Housing** le notificó al señor **Conde Viera** que el precio había aumentado a $122,000.00. Luego, en marzo de 2023, **P & J Housing** se comunicó con el señor **Conde Viera** para la firma de un nuevo contrato. En vista de esta situación, el señor **Conde Viera** mostró su objeción e inconformidad.

Posteriormente, el 14 de marzo de 2023, el señor **Conde Viera** cumplimentó un *Formulario Presentación Querella General* ante el **DACo**.[5] En la *Querella*, solicitó que se le honrara el precio establecido en el contrato: $121,000.00. Tiempo después, el 11 de agosto de 2023, el señor **Conde Viera** presentó como *prueba documental* las cartas cursadas entre las partes, en las cuales se le informaba que *no cualificaba* para el Programa de Vivienda de Interés Social; por lo que, le devolvieron el depósito o el pronto de pago.

Entretanto, el 28 de agosto de 2023, **P & J Housing** presentó su *Contestación a Querella* acompañada con copia de la *Certificación de Proyecto de Vivienda*

---

[2] Apéndice de *Petición*, págs. 6- 20.
[3] *Íd.*, pág. 5.
[4] *Íd.*, pág. 1.
[5] *Íd.*, págs. 2- 4.

*Asequible o Interés Social* (*Certification of Affordable Housing Project*).[6] Adujo que no podía culminar la transacción de compraventa dado que el proyecto había sido certificado como uno de interés social. Por otra parte, sustentó que el señor **CONDE VIERA** no cualificaba con los requisitos del *Código de Incentivos de Puerto Rico* por poseer una residencia en Estancias de Trinitaria en Aguirre, Puerto Rico.[7] Al día siguiente, el 29 de agosto de 2023, **P & J HOUSING** presentó su *Contestación a Querella Enmendada* acompañada de documentos adicionales sobre el cambio del proyecto.[8]

El día 31 de agosto de 2023, el **DACo** celebró una audiencia administrativa. Finalmente, el 10 de enero de 2024, el **DACo** dictó la *Resolución* recurrida.

Insatisfecho, el 31 de enero de 2024, **P & J HOUSING** presentó *Moción Solicitando Reconsideración*.[9] Planteó que, una vez certificado el proyecto como uno de interés social, todos los hogares están cobijados por el refrendo. Ello implica que la venta de una residencia contraria a la certificación estaría en violación de la ley y la política pública del Estado. Igualmente, explicó que se justificaba su acción de defenderse de la reclamación y no procedía la imposición de honorarios de abogado por temeridad. El 20 de febrero de 2024, el señor **CONDE VIERA** presentó *Moción en Oposición a Solicitud de Reconsideración*.[10] Así pues, el 2 de mayo de 2024, el ente administrativo pronunció su *Notificación y Orden Resolución en Reconsideración* declarando no ha lugar la mencionada petición.[11]

En desacuerdo, el 30 de mayo de 2024, **P & J HOUSING** acudió ante este foro intermedio revisor mediante *Petición* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Departamento de Asuntos del Consumidor al no desestimar la querella por incumplir la parte querellante con los requisitos para adquirir una vivienda de interés social.

> Erró el Honorable Departamento de Asuntos del Consumidor al no cumplir con su función ejecutiva de hacer cumplir las leyes y, más a[ú]n, su propio Reglamento.

---

[6] Apéndice de *Petición*, págs. 27- 35.
[7] Ley Núm. 60 de 1 de julio de 2019, según enmendada.
[8] Apéndice de *Petición*, págs. 36- 53.
[9] *Íd*., págs. 79- 87.
[10] *Íd*., págs. 91- 96.
[11] *Íd*., págs. 97- 101.

Erró el Honorable Departamento de Asuntos del Consumidor al imponer honorarios de abogado sin haber determinado temeridad por parte de la querellada-recurrente.

El 3 de junio de 2024, intimamos *Resolución* en la cual, entre otras, concedimos un plazo de treinta (30) días al señor **CONDE VIERA** para presentar su(s) alegato(s) en oposición al recurso. El 8 de julio de 2024, el señor **CONDE VIERA** presentó su escrito.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Revisión Judicial*

La Ley Núm. 38- 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[12] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[13]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[14] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[15] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[16]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e

---

[12] 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[13] 3 LPRA § 9671.
[14] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004). Véase, además J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm (2017), págs. 304– 306.
[15] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.
[16] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).

interpretaciones merecen gran consideración y respeto.[17] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[18] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[19]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[20] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.[21]

Primordialmente, el alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[22]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[23] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[24] Debido a la presunción de regularidad y corrección que cobija a

---

[17] *Transporte Sonnell, LLC v. Junta de Subastas,* 2024 TSPR 82; 214 DPR ____; *Torres Rivera v. Policía de PR,* 196 DPR 606, 625-626 (2016); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891 (2008).
[18] *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).
[19] *DACo v. Toys "R" Us,* 191 DPR 760, 765 (2014).
[20] *Torres Rivera v. Policía de PR, supra,* pág. 628.
[21] *Íd.*
[22] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[23] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[24] *Otero v. Toyota, supra,* pág. 728.

las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[25] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su *consideración*".[26] De modo que no podrá basarse únicamente en simple alegaciones.A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[27] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[28]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[29] Nuestro Máximo Foro ha expresado que "los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias".[30] Es decir, no existe deferencia en la interpretación de derecho realizada por una agencia administrativa, debido a que esto es una función consustancial de los tribunales de justicia.[31]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[32] A *contrario sensu*, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[33] Del mismo modo, el Prof. Echevarría Vargas ha apuntalado que las decisiones de las

---

[25] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[26] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[27] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[28] *Id.*
[29] 3 LPRA § 9675. *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[30] *Vázquez v. Consejo Titulares*, 2025 TSPR 56, pág. 28.
[31] *Íd.*, pág. 32.
[32] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[33] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009).

agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[34]

### - B - *Departamento de Asuntos del Consumidor* (*DACo*)

La Ley Núm. 5 de 23 de abril de 1973, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor,* creó al **DACo** como la agencia administrativa cuyo propósito primordial es vindicar e implementar los derechos del consumidor.[35] Entre las diversas facultades que le fueron conferidas al secretario del **DACo** se encuentra: "atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía".[36] Igualmente, la agencia podrá:

> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. Disponiéndose, que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones.[37]

En consecuencia, se implantó una estructura de adjudicación administrativa con plenos poderes para resolver las controversias ante su consideración y concesión de los remedios pertinentes conforme a derecho. De esta forma, la Asamblea Legislativa le adjudicó la responsabilidad de velar por el cumplimiento de todas las leyes concernientes a los derechos de los consumidores.[38] Como parte del cumplimiento con su misión, se le facultó al secretario del **DACo** la promulgación del *Reglamento de Procedimientos Adjudicativos*.[39] Su fin fundamental es "asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación".[40]

---

[34] J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ediciones Situm, 2023, pág. 340.

[35] 3 LPRA § 341b *et seq. DACo v. AFSCME*, 185 DPR 1 (2012); *Amieiro González v. Pinnacle Real Estate,* 173 DPR 363 (2008); *ASG v. Mun. San Juan*, 168 DPR 337 (2006).

[36] 3 LPRA § 341e(c); *Rodríguez v. Guacoso Auto*, 166 DPR 433, 438 (2005).

[37] 3 LPRA § 341e(d).

[38] *Íd.*

[39] *Reglamento* Núm. 8034, Departamento de Asuntos del Consumidor. (Aprobado y radicado el 13 de junio de 2011).

[40] *Reglamento* Núm. 8034, pág. 1.

### - C – *Código de Incentivos de Puerto Rico*

El 1 de julio de 2019, la Asamblea Legislativa aprobó el *Código de Incentivos de Puerto Rico* (*Código*).[41] Tal *Código* uniformó y consolidó, *en un solo estatuto*, varios reglamentos afines con **decretos**, **incentivos**, **subsidios** y **beneficios contributivos**, entre otros. Este nuevo marco legal y administrativo rige la solicitud, evaluación, concesión o denegatoria de incentivos específicamente por parte del Departamento de Desarrollo Económico y Comercio (DDEC). En lo pertinente, es preciso abundar esencialmente en los requisitos de **elegibilidad** para que un ciudadano cualifique para la **venta** o el arrendamiento de viviendas certificadas de **interés social**. La sección 2071.01 del *Código de Incentivos de Puerto Rico* sobre empresas dedicadas a la infraestructura y a la energía verde o altamente eficiente, enuncia:

> Se provee para que un **negocio establecido**, o que será establecido, en Puerto Rico por una Persona, organizado o no bajo un nombre común, pueda solicitarle al Secretario del DDEC la Concesión de Incentivos cuando la Entidad se establece en Puerto Rico para dedicarse a una de las siguientes actividades elegibles:
> (1) Realizar obras de mejoras, restauración o reconstrucción de edificios existentes, u obras de reestructuración o **nueva construcción** en solares baldíos en las Zonas Históricas de Puerto Rico, y los alquileres de tales edificios localizados en tales zonas una vez hayan sido mejorados, restaurados, reconstruidos, restructurados o construidos, según sea el caso;
> (2) **Construcción o rehabilitación de Viviendas de Interés Social para la venta o el arrendamiento a Familias de Ingresos Bajos o Moderados y Viviendas de Clase Media**;
> (3) Personas dedicadas a la construcción, alquiler o arrendamiento de propiedades a Personas de Edad Avanzada que no tengan una vivienda propia y cuyos ingresos están dentro de los límites establecidos podrán ser iguales o más liberales, pero nunca más restrictivos que los establecidos por el Gobierno Federal;
> (4) Desarrolladores de Vivienda de Interés Social aprobados y subsidiados total o parcialmente por el Gobierno de Puerto Rico [...].[42]

En consonancia con lo anterior, razonablemente se puede inferir que las casas de interés social desarrolladas por los negocios o proyectos de construcción,

---

[41] Ley Núm. 60- 2019, según enmendada. 13 LPRA § 54001. El *Código* procura promover actividades que aporten al crecimiento de la economía en Puerto Rico mediante la inversión, la exportación y la creación de empleos; agilizar responsablemente el proceso de solicitud y aprobación; y establecer procesos uniformes de reglamentación, medición y evaluación continua tras la otorgación de incentivos para garantizar el cumplimiento, la transparencia y la consecución de los objetivos fiscales de desarrollo.

[42] 13 LPRA § 45. (énfasis nuestro).

al palio del *Código de Incentivos de Puerto Rico,* estarán disponibles para familias de ingresos bajos, moderados o clase media. Sustancialmente, para la definición o la clasificación de familias con ingresos bajos o moderados resulta menester considerar la sección 1020.07(11) del propio *Código*:

> (11) **Familia de Ingresos Bajos o Moderados**. — Significa **toda familia o persona que no posea una vivienda propia** y cuyo ingreso anual no exceda el establecido para familias de ingresos bajos o moderados por los Programas de Vivienda de Interés Social del Gobierno de los Estados Unidos de América o del Gobierno de Puerto Rico, según establecido por el Secretario de la Vivienda a tenor con la reglamentación aplicable.[43]

La **Familia o Persona de Clase Media** se describe como "toda familia o persona que **no posean una hogar propio** y cuyo ingreso anual exceda el establecido para Familias de Ingresos Bajos o Moderados por los Programas de Vivienda de Interés Social del Gobierno de Puerto Rico o del Gobierno de los Estados Unidos, hasta un máximo equivalente al sesenta y cinco por ciento (65%) de la cantidad máxima asegurable por el Federal Housing Administration (FHA) para el área".[44] Así que de tener morada automáticamente se considerará ilegible.

### - D – *Los Contratos y la Temeridad*

Nuestro ordenamiento jurídico instaura que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes.[45] A pesar de ello, para que las partes queden debidamente obligadas, es requisito indispensable: (1) el *consentimiento* de los contratantes; (2) el *objeto* cierto que sea materia del contrato; y (3) la *causa* de la obligación que se establezca. Una vez concurren las condiciones esenciales para su validez, los contratos son **obligatorios**.[46]

> En cambio, la Regla 44.1 (d) de las de Procedimiento Civil de 2009 especifica:

> (d) Honorarios de Abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

---

[43] 13 LPRA § 45018. (énfasis nuestro).
[44] 13 LPRA § 45018. (énfasis nuestro).
[45] Art. 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3391.
[46] Art. 1230 del Código Civil de Puerto Rico de 1930, 31 LPRA § 3451.

Dicho eso, cuando una parte, o su representación legal, haya procedido de manera *temeraria* en la correcta tramitación de un pleito, el tribunal deberá imponerle, en la sentencia que emita, la obligación de satisfacer el pago de una suma por concepto de *honorarios de abogado*.[47] Acorde con la hermenéutica, **la temeridad** constituye aquel **patrón de conducta** que lleva a una de las partes a incurrir en los gastos de un litigio cuya controversia pudo haberse resuelto fuera de los tribunales.[48]

Por ende, una parte incurre en *temeridad* cuando está presente alguna de las siguientes circunstancias: (1) contestar una demanda y negar responsabilidad total; (2) defenderse injustificadamente de la acción en su contra; (3) creer que la cantidad reclamada es exagerada y tal sea el único motivo por el cual se opone a las alegaciones de la parte demandante, pudiendo limitar la controversia a la fijación de la correspondiente cuantía; (4) incurrir en un litigio del cual *prima facie* se desprende su responsabilidad y; (5) negar un hecho cuya veracidad conste.[49]

Así pues, una vez un tribunal con competencia concreta que se ha incurrido en *temeridad,* está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de *honorarios de abogado*.[50] El antedicho estatuto preceptúa en nuestro ordenamiento jurídico procesal la intención de "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito."[51]

De este modo, **el juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor**, **ello mediante el ejercicio de su sano juicio**.[52] Esto quiere decir que, la decisión que en su día emita sólo será objeto de revisión si ha mediado abuso de discreción en

---

[47] 32 LPRA Ap. V, R. 44.1 (d); *Torres Montalvo v. Gobernador ELA,* 194 DPR 760 (2016).
[48] *Blás v. Hosp. Guadalupe,* 146 DPR 267 (1998); *Torres Ortiz v. ELA,* 136 DPR 556 (1994); *Elba ABM v. UPR,* 125 DPR 294 (1990). (énfasis nuestro).
[49] *Blas v. Hosp. Guadalupe, supra; Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713 (1987).
[50] *Torres Montalvo v. Gobernador ELA, supra,* pág. 779.
[51] *Íd.,* pág. 778, citando a *Andamios de PR v. Newport Bonding,* 179 DPR 503, 520 (2010); *Blás v. Hosp. Guadalupe, supra,* a la pág. 335.
[52] (énfasis nuestro).

el ejercicio de su ministerio.[53] En ese contexto, la doctrina vigente reconoce que un tribunal incurre "en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".[54]

- III -

**PJ HOUSING** punteó que el **DACo** incidió al no desestimar la *Querella* del señor **CONDE VIERA**. Cimentó su posición en el hecho de que el Departamento de la Vivienda certificó el proyecto Gran Savannah como uno de *interés social* y, consiguientemente, el **DACo** tenía la obligación de cumplir con su función ejecutiva de hacer cumplir las leyes y su propio *Reglamento*. Asimismo, cuestionó la imposición de honorarios de abogado sin haber concluido temeridad.

Por su lado, el señor **CONDE VIERA** arguyó que el *Contrato* otorgado el 5 de abril de 2022 entre las partes, de ninguna manera es contrario a la ley, a la moral ni al orden público. Incluso, manifestó que la *Certificación* fue aprobada el 28 de noviembre de 2022, fecha posterior al otorgamiento del *Contrato*. Añadió que, el **DACo** proveyó conforme a derecho y acentuando que el *Contrato* no podía ser alterado o modificado excepto por acuerdo de las partes. Referente a la controversia sobre la imposición de honorarios de abogado a su favor, el señor **CONDE VIERA** razonó que **PJ HOUSING** ejecutó acciones conducentes a propiciar el incumplimiento del *Contrato*. Aseguró, además que tal práctica fue temeraria, pues la controversia podía evitarse.

Por encontrarse intrínsecamente relacionados, discutiremos los primeros dos (2) errores señalados de forma conjunta. Para resolver la presente controversia, es indefectible observar detenidamente el tracto de los hechos atinentes al *Contrato* o acuerdo entre **PJ HOUSING** y el señor **CONDE VIERA**. Ciertamente, el señor **CONDE VIERA** es propietario de una residencia situada en el municipio de

---

[53] *Colón Santos v. Coop. Seg. Múlt. P.R.*, 173 DPR 170 (2008); *Blás v. Hosp. Guadalupe, supra*; *Fernández v. San Juan Cement Co., supra*.
[54] *Citibank et al v. ACBI et al.*, 200 DPR 724, 736 (2018).

Salinas.[55] Así, el 5 de abril de 2022, **PJ HOUSING** y el señor **CONDE VIERA** suscribieron el *Contrato*.[56] Unos ocho (8) meses después, el 28 de noviembre de 2022, el Departamento de la Vivienda certificó el proyecto Gran Savannah como uno de *interés social* al palio del *Código de Incentivos de Puerto Rico*.

En ese contexto, al formalizarse el *Contrato*, entre otras, convinieron: (1) el precio de compraventa de $121,000.00; (2) el importe no podría aumentarse excepto **por acuerdo entre las partes**; (3) se realizó un pronto pago por la suma de $50.00; (4) **PJ HOUSING** se comprometió a gestionar el financiamiento hipotecario; (5) la fecha de entrega aproximada fue pautada para dieciocho (18) meses; (6) el señor **CONDE VIERA** manifestó haber leído en su totalidad y con cuidado el *Contrato*, entendió las obligaciones en las que incurrió al igual que sus implicaciones legales y estaba conforme con el mismo; (7) en caso de resolverse este contrato por las causas señaladas en los incisos de la cláusula 21 o en cualquier otro caso de resolución en que mediara incumplimiento del COMPRADOR y no haya causa imputable al VENDEDOR, éste podría resolver este contrato enviando la debida notificación por correo certificado y retener, sin necesidad de probar daños, la cantidad máxima de 2% del precio de compraventa como pago total por los gastos incurridos; y (8) toda notificación cuyo término no se hubiera previsto en este contrato se haría con no menos de quince (15) días de anticipación si es por correo certificado con acuse de recibo, o con cinco (5) días de anticipación si es vía facsímil.[57] El *Contrato* está debidamente signado por los señores **CONDE VIERA** y Miguel A. Bibiloni, oficial autorizado de **PJ HOUSING**.

No surge del expediente que, al momento de asentir al *Contrato*, **PJ HOUSING** haya hecho mención alguna sobre los posibles cambios o modificaciones en las circunstancias del proyecto Gran Savannah; o se le haya apercibido al señor **CONDE VIERA** sobre el petitorio de *Certificación de Proyecto de Vivienda Asequible o Interés Social*.[58] Más, una vez se concedió la *Certificación de Proyecto de Vivienda*

---

[55] Discernimos que es inmaterial este hecho, toda vez que, al pactar el *Contrato*, Gran Savannah era un proyecto común sujeto a oferta y demanda.

[56] El inciso 5 del *Contrato* asevera: "El precio de compraventa de la unidad objeto del presente contrato es de $121,000.00, el cual no podrá ser aumentado, **excepto por acuerdo entre el COMPRADOR y la VENDEDORA**, y se desglosa como sigue: [...].

[57] Véase las cláusulas: 5, 7, 15, 21, 24 y 28.

[58] Apéndice de la *Petición*, pág. 75.

*Asequible o Interés Social* se aprestó que el proyecto Gran Savannah constaría de 144 unidades con una valoración hasta un máximo de $137,000.00.[59] En ese momento, **PJ Housing** contactó al señor **Conde Viera** para subscribir un nuevo contrato con un precio mayor. Ante la negativa del señor **Conde Viera**, **PJ Housing** procedió a reembolsar- *unilateralmente-* el pronto pago por este no ser elegible según los requisitos de vivienda de *interés social, criterio esencial para la concesión de los incentivos a favor del proyecto.*

Ante ello, inferimos que el *Contrato,* otorgado de manera libre y voluntaria y cuyos términos y condiciones son claros, es uno válido entre las partes y **PJ Housing** incumplió con su deber u obligación concerniente a acreditar claramente todos los requisitos necesarios para el acuerdo; aumentar el precio sin previo concierto entre las partes; y la notificación adecuada sobre la resolución del contrato. Por ende, la posterior *Certificación de Proyecto de Vivienda Asequible o Interés Social* no incide sobre la validez del *Contrato*. El **Departamento de Asuntos del Consumidor (DACo)** no incidió en cuanto a los primeros dos (2) errores.

En lo relativo al tercer error sobre la imposición de *honorarios de abogados,* es conocido que las agencias administrativas poseen facultad para imponer sanciones.[60] Ello incluye sanciones económicas; desestimación de la acción; eliminar las alegaciones de la parte promovida; imposición de costas y honorarios de abogados en los mismos casos que dispone la citada Regla 44.1 de las de Procedimiento Civil de 2009.

La Regla 27 sobre concesión de remedios del *Reglamento de Procedimientos Adjudicativos* le faculta al funcionario, secretario o panel de jueces que presida la vista imponer a la parte perdidosa el pago de costas y honorarios de abogados. No obstante, el procedimiento se regirá por lo dispuesto en la Regla 44 de las de Procedimiento Civil de Puerto Rico de 2009, según enmendada. Aun así, para que

---

[59] Tomamos conocimiento judicial de que la *Certificación de Proyecto de Vivienda Asequible o Interés Social* previene que el dueño del proyecto será responsable de cumplir con los requerimientos del Estado y/o agencias federales para la aprobación, solicitudes de fondos, créditos o subsidios y las leyes aplicables del Gobierno de Puerto Rico [...].

[60] 3 LPRA § 9661.

proceda la imposición de *honorarios de abogado* se requiere que la parte, en este caso, **PJ HOUSING** haya incurrido en un **patrón de conducta** conducente a propiciar el incumplimiento del *Contrato*.

Luego de un análisis minucioso, concebimos que, aunque, evidentemente, **PJ HOUSING** incumplió con el *Contrato*, no existe evidencia fehaciente que nos muestre una **conducta repetitiva** con la intención de obstinar. Es decir, no discernimos que haya habido terquedad, obstinación, o contumacia por parte **PJ HOUSING**. Dicha entidad procuraba cumplir con los requerimientos gubernamentales para evitar perder la *Certificación*. Ante la ausencia de un patrón que nos refleje *temeridad*, concluimos que no procede la imposición de *honorarios de abogado* ascendentes a $3,000.00. El **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** erró al imponer honorarios de abogado.

Ante este cuadro fáctico y procesal, no se nos ha presentado evidencia alguna que pueda rebatir la presunción de corrección que cobija el dictamen administrativo, así como brindamos la deferencia al organismo administrativo por su *expertise*. Es forzoso concluir que la decisión recurrida es parcialmente razonable y se sostiene en la *evidencia sustancial* que obra en el legajo apelativo; por lo que, procede su confirmación parcial.

- IV -

Por los fundamentos antes expuestos, ***modificamos*** la *Resolución* pronunciada el 4 de enero de 2024 a los fines de eliminar la imposición de *honorarios de abogados*: $3,000.00; y así modificada, ***confirmamos*** la *Resolución* prescrita el 4 de enero de 2024 por el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)**, Oficina Regional de Ponce, en todos sus demás extremos.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones